# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **STATE FARM FIRE & CASUALTY COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:09-CV-1144-VEH** |
| | ) |
| **JERID LEE ELDRIDGE, *et al.*,** | ) |
| | ) |
| **Defendants.** | ) |

## <u>MEMORANDUM OPINION</u>

This is an insurance declaratory judgment action.  It is presently before the

court on Plaintiff State Farm & Casualty Company's Motion for Summary Judgment

("State Farm").  (doc. 9).  In short, State Farm seeks a declaration as to whether it has

a duty to defend and indemnify Defendant Jerid Lee Eldridge ("Eldridge") in a

lawsuit (the "underlying lawsuit") brought against him.[1]  Defendants Brenda Barnes,

acting as Personal Representative of the Estate of Verlon LeMaster, Jr., deceased,

Gerald E. Eldridge, and Jackie G. Eldridge do not oppose State Farm's motion.[2]  (doc.

---

[1] The underlying lawsuit is styled *Brenda Barnes, as Personal Representative of the Estate of Verlon LeMaster, Jr., Deceased v. Brian Alan Butler, et al.*, Case No. CV-04-416.  That action is pending in the Circuit Court of Marshall County, Alabama.

[2] During the relevant time period, State Farm issued a policy of homeowners insurance to Eldridge's mother and father, Defendants Gerald E. Eldridge and Jackie G. Eldridge.  State Farm has neither alleged nor argued that Eldridge is not an "insured" within the terms of that policy. The present case is brought only as to State Farm's duties with respect to Jerid Lee Eldridge.

13).  However, Eldridge, who is proceeding *pro se*, submitted a brief and evidence in opposition to summary judgment.  (doc. 26).

Both State Farm and Eldridge request oral argument; however, the court is of the opinion that this motion can be adjudicated without a hearing.  As such, the requests for oral argument are **DENIED**.  After careful consideration of the motion, the parties' briefs, and the evidence of record, this court concludes that State Farm's Motion for Summary Judgment is due to be **GRANTED IN PART** and **DENIED IN PART**.

## I.    Factual Background[3]

---

[3] Whenever the facts are in dispute, they are stated in the manner most favorable to the non-moving party.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts.  *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party).  This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

Appendix II to this court's Uniform Initial Order, entered in this case on August 2, 2009 (doc. 18), sets out the requirements that parties must follow when moving for or opposing summary judgment.  Therein, a party opposing summary judgment is cautioned that "*All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*"  (doc. 6, at p.16) (emphasis in original).  Eldridge's response to summary judgment does not comply with the requirements of Appendix II.  Eldridge was limited to a 30 page response, yet, his responsive submission is 80 pages long.  In addition, Eldridge did not respond to the movant's facts in accordance with the Appendix II nor did he follow the formatting requirements.  Despite Eldridge's failure to comply with Appendix II, the court, in its discretion,

While many of the facts, as shown by the evidence of record, are hotly disputed between State Farm and Eldridge, the material facts of this lawsuit are not in dispute. Facts that are not material have not been considered by this court.[4]

Recently, this court summarized the relevant allegations of the underlying complaint:

> On August 15, 2003, Vernon LeMaster, Jr., a police officer, attempted to execute a "juvenile pick-up order" on Brian Alan Butler at a residence located in Grant, Alabama. (doc. 1, Ex. B, p.6, ¶ 15). Mr. LeMaster was shot and killed while attempting to execute the warrant.
>
> Two days before Mr. LeMaster's death, Butler and Eldridge removed two .45 caliber handguns and a box of ammunition from Eldridge's parents' home. The following day, on April 14, 2003, Butler and Eldridge allegedly sought refuge at the Grant, Alabama, residence in an effort to avoid being found by their parents and law enforcement. When Mr. LeMaster entered the residence on August 15, both Butler and Eldridge were "laying in wait" in a bedroom closet. (*Id.* at ¶ 23A). After Mr. LeMaster went into the bedroom, Butler and Eldridge emerged from their hiding place and shot Mr. LeMaster once in the head.[5]

(doc. 28, p.3) (footnotes in original).

---

has completely and thoroughly considered his responsive submission.

[4] For example, State Farm asserts that Eldridge was a "run away." Eldridge argues, in several pages of his opposition brief, that he was not a "run away," but that he had his parents' permission to spend the night away from home. For purposes of this declaratory judgment action, whether Eldridge was a "run away" is immaterial to the issue of insurance coverage. State Farm has not argued that coverage is unavailable to Eldridge on the basis of his being an alleged "run away."

[5] The complaint in the underlying lawsuit alleges that either or both Butler and/or Eldridge fired the fatal shot.

Vernon LeMaster was, at the time of his death, the Chief of Police in Grant, Alabama.

The deposition of Mark Adams was taken in the underlying case. Deputy Adams is a law enforcement officer with the Madison County Sheriff's Department. He witnessed the shooting death of Chief LeMaster. Eldridge submitted Deputy Adams' deposition as evidence in opposition to summary judgment.[6] The following facts are gleaned from his deposition testimony. (doc. 26-4, Deposition of Mark Adams, at pp. 28-34).

On August 15, 2003, four law enforcement officers attempted to execute an arrest warrant on Brian Butler. The officers found Butler in a bedroom of a residence located in Grant, Alabama.[7] Chief LeMaster led Deputy Adams into the bedroom while the other officers waited outside the residence to prevent Butler from escaping. When Chief LeMaster and Deputy Adams entered the bedroom Butler was walking toward the bedroom closet. Butler had a duffle bad in his hands. Chief LeMaster approached Butler and, from a distance of approximately three feet, said, "Let's go, son." At that point, Adams saw that Butler had a pistol in his hands. Holding the gun

---

[6] Deputy Adams' deposition testimony is consistent with the other evidence of record with regard to the material events surrounding Chief LeMaster's death. Eldridge submitted all of the eye witness evidence that is before this court with respect to those events.

[7] The residence was not the Eldridge's home.

with both hands, Butler fired twice at Chief LeMaster and once at Deputy Adams. Deputy Adams was uninjured and returned fire. Butler was shot and injured, but he survived the ordeal. Chief LeMaster was shot once in the eye, at close range, and he later died from that injury.

Prior to entering the bedroom, Deputy Adams suspected that there were two people waiting inside. Shortly after the shootout ended, Eldridge was discovered inside the bedroom closet.[8]

The claims asserted against Eldridge in the underlying lawsuit are for wrongful death, wanton failure to warn, and negligent failure to warn under Alabama law. Those claims are premised exclusively on the facts surrounding the death of Chief LeMaster.

---

[8] It is worthy of note that, when ruling on the present motion, this court has not considered Eldridge's guilty plea to the crime of "intentional murder" for his role in the death of Chief LeMaster. State Farm argues that Eldridge is estopped from disavowing his guilty plea; however, State Farm has not supported its argument with legal authority nor has it shown that the doctrine of collateral estoppel operates to bar Eldridge from arguing facts that are contrary to that plea. In any event, as a matter of law, collateral estoppel does not preclude Eldridge from challenging his guilty plea in these proceedings because State Farm was not a party to the criminal case. *See Bonner v. Lyons, Pipes & Cook, P.C.*, Nos. 1070187 and 1070272, 2009 WL 886513, at *4 (Ala. Apr. 3, 2009) ("Collateral estoppel is an equitable defense that bars a party from relitigating an issue that has been resolved in an earlier case. *Ex parte Flexible Prods. Co.*, 915 So.2d 34, 45 (Ala.2005). Collateral estoppel applies when the following elements are shown: (1) an issue identical to the one litigated in the prior suit; (2) that the issue was actually litigated in the prior suit; (3) that resolution of the issue was necessary to the prior judgment; and (4) the same parties. *Dairyland Ins. Co. v. Jackson*, 566 So.2d 723, 726 (Ala. 1990).") (emphasis supplied). Moreover, as discussed more fully *infra*, the issue of whether Eldridge intended for Chief LeMaster to be killed is immaterial to the disposition of the motion at bar.

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant.  *See, e.g., Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See, e.g., Chapman*, 229 F.3d at

1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248;  *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.* facts that would entitle it to a directed verdict if not controverted at trial.  *See Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party

satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Because Eldridge is proceeding *pro se*, this court is obligated to construe his

pleadings "liberally." *Miller v. Anheuser Busch, Inc.*, No. 09-10527, 2009 WL 3262023, at *1 (11th Cir. Oct. 13, 2009) ("As an initial matter, because Miller is appearing *pro se*, we liberally construe her pleadings.") (citing *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). That said, "[s]peculation or conjecture from a party cannot create a genuine issue of material fact." *Id.* (citing *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (emphasis in original)). Moreover, "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

With the foregoing in mind, the court will analyze the merits of State Farm's motion.

## III.   Discussion

"A federal court sitting in diversity, as in this case, must apply the choice of law principles of the state in which it sits. In determining which state's law applies in a contract dispute, Alabama follows the principle of *lex loci contractus*, applying the law of the state where the contract was formed." *St. Paul Fire and Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 895 n.1 (11th Cir.

9

2009) (citing *Cherokee Ins. Co., Inc. v. Sanches*, 975 So.2d 287, 292 (Ala. 2007)).

This court is being asked to interpret an Alabama insurance policy; therefore,

Alabama substantive law applies.

> Alabama law generally imposes the burden of proof on policy coverage
> issues on the insured, while the burden of proving applicability of a
> policy exclusion rests with the insurer.  Compare *Jordan v. National
> Acc. Ins. Underwriters Inc.*, 922 F.2d 732, 735 (11th Cir. 1991) ("Under
> Alabama law the general rule is that the insured bears the burden of
> proving coverage.") with *Acceptance Ins. Co. v. Brown*, 832 So.2d 1, 12
> (Ala. 2001) ("In general, the insurer bears the burden of proving the
> applicability of any policy exclusion."). Exceptions to coverage are
> interpreted as narrowly as possible to maximize coverage, and are
> construed strongly against the insurance company that issued the policy.
> *See Porterfield v. Audubon Indem. Co.*, 856 So.2d 789, 806 (Ala. 2002).

*Pennsylvania Nat. Mut. Cas. Ins. Co. v. Roberts Bros., Inc.*, 550 F. Supp. 2d 1295,

1303 (S.D. Ala. 2008).  Also,

> Under Alabama law, it is well established "that when doubt exists
> as to whether coverage is provided under an insurance policy, the
> language used by the insurer must be construed for the benefit of the
> insured." [*St. Paul Mercury Ins. Co. v.*] *Chilton-Shelby* [*Mental Health
> Center*], 595 So.2d [1375,] at 1377 [(Ala. 1992)]; *see Safeway Ins. Co.
> of Ala., Inc. v. Herrera*, 912 So.2d 1140, 1143 (Ala. 2005) ("To the
> extent the language of an insurance policy provision is ambiguous, all
> ambiguities must be resolved against the insurance company."). It is
> equally well settled, however, that insurers have the right to limit their
> liability by writing policies with narrow coverage. *Johnson v. Allstate
> Ins. Co.*, 505 So.2d 362, 365 (Ala. 1987). If there is no ambiguity, courts
> must enforce insurance contracts as written and cannot defeat express
> provisions in a policy by making a new contract for the parties. *Id.*

*St. Paul Fire and Marine Ins. Co.*, 572 F.3d at 898.

**A.     State Farm does not owe Eldridge a duty to defend.**

In the case at bar, State Farm argues that is does not owe a duty to defend Eldridge in the underlying lawsuit for two reasons: (1) the shooting death of Chief LeMaster was not an "occurrence" as that term is defined under the relevant policy; and (2) an intentional acts exclusion precludes coverage.  Because, for the reasons discussed *infra*, there was no "occurrence" under the terms of the policy, this court need not and has not considered State Farm's argument that coverage is barred because of the intentional acts exclusion.

The relevant portions of the policy provide as follows:

SECTION II - LIABILITY COVERAGES

COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

   1.     pay up to our limit of liability for the damages for which the insured is legally liable; and

   2.     provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

***

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the Declarations. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the Declarations.

Certain words and phrases are defined as follows:

4.      "insured" means you and, if residents of your household:

        a.      your relatives; and

        b.      any other person under the age of 21 who is in the care of a person described above.

\* \* \*

7.      "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

        a.      bodily injury; or

        b.      property damage;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

\* \* \*

## SECTION II - EXCLUSIONS

1.      Coverage L and Coverage M do not apply to:

        a.      bodily injury or property damage:

(1)     which is either expected or intended by the insured; or

(2)     which is the result of willful and malicious acts of the insured;

(doc. 9, Ex. D, pp. 1-2, 15-16).

Under the terms of the policy, the duty to defend is triggered only if there is an "occurrence," which is defined as an "accident." The word "accident" is not defined within the policy. Seizing on that fact, Eldridge argues that the policy language is ambiguous. The court rejects Eldridge's argument.

Under Alabama law, "[t]he issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide . . . . If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court." *Nationwide Ins. Co. v. Rhodes*, 870 So. 2d 695, 696-97 (Ala. 2003) (citation omitted); *see also B.D.B. v. State Farm Mut. Auto. Ins. Co.*, 814 So.2d 877, 879 (Ala. Civ. App. 2001) ("The interpretation of an insurance contract presents a question of law."). "General contract law requires a court to enforce, as it is written, an unambiguous and lawful contract." *Drummond Co. v. Walter Industries, Inc.*, 962 So. 2d 753, 780 (Ala. 2006); *see also Progressive Specialty Ins. Co. v. Naramore*, 950 So. 2d 1138, 1141 (Ala. 2006) ("Insurance contracts are to be enforced as they are written, as long as there is no ambiguity in the provisions involved.") (citations omitted); *Shrader v. Employers Mut. Cas. Co.*, 907 So.2d 1026, 1034 (Ala. 2005) ("If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy . . . by making a new contract for the parties.") (citation omitted).

The determination of whether policy language is ambiguous or

13

unambiguous is critical.  "To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." *Safeway Ins. Co. of Alabama, Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). That said, ambiguities cannot be constructed from thin air by "strained or twisted reasoning" in interpreting the language.  *Id*.  Furthermore, "the mere fact that a word or phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous." *Id.*  Rather, "[i]n determining whether the language of a contract is ambiguous, courts construe the words according to the interpretation ordinary men would place on the language used therein . . . . The words are given the meaning that persons with a usual and ordinary understanding would place on the words." *Naramore*, 950 So. 2d at 1141 (citations and internal quotations omitted); *see also Herrera*, 912 So. 2d at 1143 (similar).

*Pennsylvania Nat. Mut. Cas. Ins. Co.*, 550 F. Supp. 2d at 1303-04.[9]

In light of the foregoing, the court finds that State Farm's failure to provide a

_____

[9] Compare *St. Paul Fire and Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 898 (11th Cir. 2009):

> "A term in a contract is ambiguous only if, when given the context, the term can reasonably be open to different interpretations by people of ordinary intelligence." *Lambert v. Coregis Ins. Co.*, 950 So. 2d 1156, 1162 (Ala. 2006). The parties, however, cannot create ambiguities by setting forth different interpretations or "[by inserting] ... strained or twisted reasoning." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001). "Moreover, the mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous." *Safeway Ins. Co. of Ala.*, 912 So. 2d at 1143. "If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." *Id*. Additionally, in determining whether an insurance policy is ambiguous, "a court cannot consider the language in the policy in isolation, but must consider the policy as a whole." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 309 (Ala.1999).

14

definition of the word "accident" in its policy does not create an ambiguity.

Moreover, the word "accident" is not inherently ambiguous. The Alabama Supreme

Court, when addressing whether an insurer's failure to define the word "accident" in

a policy rendered the policy ambiguous, rejected an argument very similar to

Eldridge's, and it held that the policy was not ambiguous. *See Hartford Cas. Ins. Co.*

*v. Merchants & Farmers Bank*, 928 So.2d 1006, 1011 (Ala. 2005). The Court

pointed out that "accident" is a "commonly used word." *Id.* The Court went on to

note that:

> In *St. Paul Fire & Marine Insurance. Co. v. Christiansen Marine, Inc.*,
> 893 So. 2d 1124, 1136 (Ala. 2004), this Court applied the following
> definition of "accident" found in Black's Law Dictionary 15 (7th ed.
> 1999): "An unintended and unforeseen injurious occurrence; something
> that does not occur in the usual course of events or that could be
> reasonably anticipated." In *United States Fidelity & Guaranty Co. v.
> Bonitz Insulation Co. of Alabama*, 424 So. 2d 569, 572 (Ala. 1982), this
> Court, citing *Employers Insurance Co. of Alabama v. Rives*, 264 Ala.
> 310, 87 So.2d 653 (1955), stated: "The term ['accident'] has ... been
> variously defined as something unforeseen, unexpected, or unusual."

*Id.*

Under the terms of the policy at issue in this litigation, an "occurrence" is an

"accident" which, in turn, is commonly understood to be an unexpected or unforeseen

event. *See id.* Therefore, when analyzing the issue of whether State Farm owes

Eldridge a duty to defend, because an "occurrence" can only be an "accident," this

court must determine whether Chief LeMaster's death was an accident.  In other words, the material events in this case are exclusively limited to those surrounding Chief LeMaster's death.

"The law is clear that an 'insurer's duty to defend is more extensive than its duty to indemnify.'" *Pennsylvania Nat. Mut. Cas. Ins. Co.*, 550 F. Supp. 2d at 1304 (internal marks omitted) (quoting *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003)).  "The insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the suit against the insured." *Alfa Mut. Ins. Co., Inc. v. Morrison*, 613 So.2d 381, 382 (Ala. 1993).  "If the allegations in the underlying complaint show an occurrence within the coverage of the policy, then the insured is obligated to defend, regardless of the ultimate liability of the insured." *St. Paul Fire and Marine Ins. Co.*, 572 F.3d at 895 (citing *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985)).

That said, "[w]hen any 'uncertainty' exists about whether the occurrence is covered under the policy, 'the court is not limited to the bare allegations of the complaint in the action against the insured but may look to facts which may be proved by admissible evidence.'" *Great American Ins. Co. v. Baddley and Mauro, LLC*, 330 Fed. Appx. 174, 177 (11th Cir. 2009) (quoting *Hartford Cas. Ins. Co. v. Merchs. &*

16

*Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (quoting, in turn, *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001)) (bracketed text omitted).  A court, however, cannot look to additional facts unless coverage is not apparent from the underlying complaint.  Accordingly, this court will look first to the underlying complaint.

The facts alleged in the underlying complaint clearly demonstrate that the death of Chief LeMaster was not an accident.  In other words, these alleged facts do not reveal an event that was "unexpected, unintended, or unforeseen." *Hartford Cas. Ins. Co.*, 928 So.2d at 1013.  To the contrary, the averments of fact show a series of purposeful and deliberate acts on the part of Butler and Eldridge that preceded Chief LeMaster's death.  The allegations are that Butler and Eldridge obtained handguns, hid in a bedroom closet to avoid law enforcement officers, and shot Chief LeMaster when he entered the bedroom.  Those are all deliberate actions.

Eldridge argues that Chief LeMaster's death was accidental because Eldridge did not intend for Chief LeMaster to be shot and killed.  That argument is not persuasive.  Eldridge confuses the difference between unintentional acts and an unexpected, unintended, or unforeseen result.  Alabama courts look first to the alleged occurrence, which in this case is the death of Chief LeMaster, and examine the actions preceding the alleged occurrence to determine if the end result of those

actions was an accident.  *See Hartford Cas. Ins. Co.*, 928 So.2d at 1013.  Moreover, an unintentional act "is not necessarily accidental."  *State Farm & Cas. Co. v. Myrick*, 611 F. Supp. 2d 1287, 1294 (M.D. Ala. 2009).  As the district court in *Myrick* observed, the Alabama Supreme Court has implied that "not all unintentional acts are accidental."  *Id.* (citing *Hartford Cas. Ins. Co.*, 928 So. 2d at 1013).  As State Farm correctly argues, on at least one occasion, the Alabama Supreme Court found that an insured had not shown an "accident" because its actions were a "series of purposeful and deliberate acts" that could not reasonably lead to an "unexpected, unintended, or unforeseen result from its course of action."  *Hartford Cas. Ins. Co.*, 928 So. 2d at 1013.  Also, a "mistake of fact and/or an error in judgment" that is nonetheless "deliberate and purposeful" cannot lead to an accidental result.  *Id.* (quoting *Mindis Metals, Inc. v. Transportation Ins. Co.*, 209 F.3d 1296, 1301 (11th Cir. 2000)).  Here, allegedly gathering weapons, hiding out to avoid law enforcement, and firing a weapon at a law enforcement officer are deliberate acts.  The resulting death of Chief LeMaster was, therefore, not an accident.

As such, the allegations of the underlying complaint do not demonstrate an "occurrence."  Consequently, there is no coverage under the policy and State Farm owes Eldridge no duty to defend under the allegations of the underlying complaint.

That said, this court's inquiry is not at an end.  In an effort to explore every

18

avenue in an effort to find coverage for Eldridge, and in light of the fact that the allegations of the underlying complaint afford no coverage, the court will examine the evidence of record regarding the facts developed by the evidence in the underlying lawsuit in an attempt to determine if there was an "occurrence." Upon examining the record, however, the undisputed evidence shows that Chief LeMaster's death was not an accident. Moreover, the fact that Eldridge stayed in the bedroom closet while Butler shot Chief LeMaster is of no help to Eldridge in these proceedings. Eldridge's role in Chief LeMaster's death is not material to the question at hand: Was the death of Chief LeMaster, the alleged "occurrence" in this case, an accident? The answer is that his death absolutely was not an accident based on the undisputed, material evidence of record. Butler aimed a handgun at Chief LeMaster and fired twice. One bullet struck Chief LeMaster in the eye. He died as a result of the wound. Butler took deliberate actions that resulted in Chief LeMaster's death.

There is no dispute as to the material facts of this case. Chief LeMaster's death is not an "occurrence" triggering coverage for Eldridge under the relevant insurance policy. Accordingly, State Farm does not owe Eldridge a duty to defend him in the underlying lawsuit.

## B.   The duty to indemnify issue is premature.

Under Alabama law, a court cannot consider whether there is a duty to

indemnify on the part of the insurer until the liability of the insured is established (*i.e.*, after an underlying civil lawsuit has been adjudicated) or the insurer makes a payment to settle the claims against its insured. *See Hartford Cas. Ins. Co.*, 928 So. 2d at 1013 (Ala. 2005) (holding that "[w]hether there is a duty to indemnify under the policy will depend on the facts adduced at the [underlying] trial . . . ."). *See also Canal Ins. Co. v. Cook*, 564 F. Supp. 2d 1322, 1325 (M.D. Ala. 2008) (dismissing without prejudice a duty to indemnify claim brought by an insurer because "any determination as to indemnification is premature" where liability has not yet been established against the insured) (citing *Sphere Drake Ins., P.L.C. v. Shoney's, Inc.*, 923 F. Supp. 1481, 1493 (M.D. Ala. 1996) ("Because the duty to indemnify will arise only after the underlying cases are resolved, this contention is premature.")); *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Roberts Bros., Inc.*, 550 F. Supp. 2d 1295, 1302 (S.D. Ala. 2008) (similar) (citing *Employers Mut. Cas. Co. v. All Seasons Window & Door Mfg., Inc.*, 387 F. Supp. 2d 1205, 1211-12 (S.D. Ala. 2005) ("It is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insureds' liability to the movants.").

In the present case, the underlying lawsuit is stayed. According to the parties' submissions before this court, there has been no finding of liability on Eldridge's part.

Also, there is neither any evidence nor a representation that State Farm made a payment to resolve the claims against Eldridge.  As such, this court finds that the duty to indemnify issue is premature.  State Farm's Motion for Summary Judgement is due to be **DENIED** as to that issue, and the claim is due to be dismissed without prejudice.

## IV.    Conclusion

Consistent with the foregoing discussion, State Farm's Motion for Summary Judgment is due to be **GRANTED IN PART**.  State Farm does not owe Eldridge a duty to defend against the underlying action.  The Motion for Summary Judgement is due to be **DENIED** because the issue of indemnification is not yet ripe for review. That claim will be dismissed without prejudice as premature.

A separate order will be entered consistent with this Memorandum Opinion.

**DONE** this 10th day of February, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge